865 F.2d 261
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Lee EVANS, Defendant-Appellant.
 No. 87-6080.
 United States Court of Appeals, Sixth Circuit.
 Dec. 12, 1988.
 
 W.D.Ky.
 AFFIRMED.
 On Appeal from the United States District Court for the Western District of Kentucky.
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an interlocutory appeal by the defendant, James Evans, from the district court's denial of a motion to dismiss certain criminal charges based on a claim of double jeopardy. Mr. Evans has already been prosecuted and convicted of conspiracy to import and distribute marijuana and possession with intent to distribute marijuana. He is now charged with engaging in a continuing criminal enterprise and tax evasion. The district court has found that the acts underlying the original conspiracy conviction and the acts underlying the current continuing criminal enterprise prosecution did not stem from a single agreement. We cannot say that the district court's finding was clearly erroneous, and we shall therefore affirm the denial of the motion to dismiss.
 
 
 2
 When a defendant makes a nonfrivolous claim that separate indictments are based on a single conspiracy, the claim must be tested at an evidentiary hearing in which the government bears the burden of proving separate conspiracies. United States v. Jabara, 644 F.2d 574, 576 (6th Cir.1981); see also In re Grand Jury Proceedings, 797 F.2d 1377, 1380 (6th Cir.1986). If the conspiracies with which the defendant is charged are both part of a single agreement, then they constitute the same offense. And if they constitute the same offense, the double jeopardy clause of the Fifth Amendment bars separate prosecutions. The court must consider the totality of the circumstances, and a finding of more than one agreement must be based upon a preponderance of the evidence.
 
 
 3
 In the case now before us, the district court held an evidentiary hearing in which DEA Special Agent Rick Sanders testified. Agent Sanders was the case agent principally responsible for investigating one Randall Garrett. He also assisted DEA agents who focused their efforts on Mr. Evans. Agent Sanders testified that when he joined DEA in 1983 there was an active case file styled "James Evans, et al." and another styled "Randall Garrett, et al." According to Agent Sanders, they were considered separate cases.
 
 
 4
 Agent Sanders testified that Mr. Evans coordinated activities the principal purpose of which was the importation of cocaine. Mr. Garrett organized activities the purpose of which was the importation of marijuana. The activities coordinated by each man were independent of the activities coordinated by the other, according to Agent Sanders. Although both Mr. Evans and Mr. Garrett obtained marijuana in Belize, Agent Sanders testified, their sources of supply in that country were not the same. And while the two men had common sources of supply in Florida, this commonality resulted from Mr. Garrett's early participation in the Evans operation before Garrett "broke away" and formed his own organization.
 
 
 5
 A number of people were involved in both operations. Agent Sanders described this overlap of personnel as mere happenstance resulting from the fact that Messrs. Garrett and Evans moved in the same community. Agent Sanders also testified that the majority of the people who participated in Mr. Evans' continuing criminal enterprise did not participate in the illegal activities directed by Mr. Garrett.
 
 
 6
 Agent Sanders further testified that Mr. Evans played no supervisory or organizational role in the illegal activities directed by Mr. Garrett. Evans' participation in the Garrett conspiracy was limited to that of a financial backer and recipient of marijuana. The agent also testified that Mr. Garrett exercised no control over the people involved in the activities directed by Mr. Evans. Although each man had his own operation, they did have a standing agreement to bail each other out when necessary. This typically consisted of Mr. Evans providing money to Mr. Garrett or Mr. Garrett providing marijuana to Mr. Evans.
 
 
 7
 On at least one occasion Mr. Evans called on Mr. Garrett for assistance in importing a shipment of cocaine. In response to this request Garrett provided a pilot to fly the cocaine into the United States. But once the cocaine arrived in this country, it was turned over to a person who was under the control of James Evans; Mr. Garrett had no further control over its distribution.
 
 
 8
 After surveying the facts brought out at the evidentiary hearing, the district court concluded that the United States had met its burden of proving that the charges in the two indictments arose from independent conspiracies. The court found it to be of "particular significance in this determination" that "the sources of supply as between the two conspiracies are not similar. This coupled with the dissimilarities in overt acts, locations and personnel mitigates [sic] in favor of this finding. Although some personnel were similar, this commonality is not dispositive."
 
 
 9
 The district court's finding can be set aside only if clearly erroneous. In re Grand Jury Proceedings, 797 F.2d at 1380-81; Jabara, 644 F.2d at 577. We can reject it only if we are " 'left with the definite and firm conviction that a mistake has been committed.' " Jabara, 644 F.2d at 577 (quoting United States v. United States Gypsum Company, 333 U.S. 364 (1958)).
 
 
 10
 In our opinion it is not unreasonable to interpret the picture sketched by Agent Sanders as indicative of separate conspiracies. Mr. Evans generally made his own deals without assistance; Mr. Garrett did likewise. The two men did cooperate at times, but the preponderance of the evidence could fairly be read as suggesting that no single agreement linked the acts underlying Mr. Evans' continuing criminal enterprise indictment to the acts that led to Mr. Evans' conspiracy conviction. The evidence could properly be interpreted as showing separate agreements.
 
 
 11
 The district court's order not being clearly erroneous, it is hereby AFFIRMED.